UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NICHOLAS THIELEN,

        Plaintiff,

  v.

MICHELLE KING,[1]
Acting Commissioner for Social Security,

        Defendant.

Case No. 23-cv-1378-bhl

---

## DECISION AND ORDER

---

Plaintiff Nicholas Thielen seeks review of the final decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. §405(g). For the reasons set forth below, the Commissioner's decision will be affirmed.

### PROCEDURAL BACKGROUND

Thielen applied for SSI on April 26, 2021, alleging a disability onset date of January 1, 2013. (ECF No. 10-1 at 19.) His claim was denied initially on November 23, 2021, and upon reconsideration on November 28, 2022. (*Id.*) Thielen then requested a hearing, which was held on May 17, 2023. (*Id.*) Following the hearing, the administrative law judge (ALJ) denied Thielen's claim in a June 1, 2023 written decision, finding him not disabled. (*Id.* at 19–33.) Thielen requested review of the ALJ's decision by the Appeals Council, which denied his request on August 17, 2023. (*Id.* at 5–8.) This appeal followed.

### FACTUAL BACKGROUND

Thielen was born on September 11, 1991, making him 21 years old on his alleged disability onset date. (*Id.* at 166.) He had not worked since 2015. (*Id.* at 24.) Thielen seeks SSI based on two alleged disabilities: bipolar disorder and "enochlophobia" (a fear of crowds). (*Id.* at 196.)

---

[1] On January 20, 2025, while this matter was pending, Michelle King was named Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, King is substituted as the defendant in this case and the case will otherwise continue. *See* 42 U.S.C. §405(g).

In assessing Thielen's claim, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. §416.920(a). (*Id.* at 20.) The ALJ found Thielen's bipolar disorder and schizoaffective disorder were severe impairments, but determined that the record did not support a finding that Thielen's alleged obesity and headaches were severe impairments. (ECF No. 10-1 at 21–22.) The ALJ also concluded that Thielen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22.)

The ALJ then determined that Thielen had the residual functional capacity (RFC) to perform a full range of work, but with non-exertional limitations including being limited to simple, routine, repetitive tasks; maintaining attention, concentration, persistence, and pace for two-hour periods throughout an eight-hour workday; and being limited to jobs involving simple decision-making, a regular set of duties and expectations, no more than occasional changes in work setting, tasks that can be performed independently and do not involve group work or tandem tasks, and no more than occasional interaction with supervisors, coworkers, and the public. (*Id.* at 23–24.) The ALJ found that Thielen was capable of performing jobs that existed in significant numbers in the national economy, including hand packager, kitchen helper, and industrial cleaner. (*Id.* at 32.) The ALJ therefore determined that Thielen was not disabled.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."

*Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is deferential and is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Thielen challenges two aspects of the ALJ's decision. He claims that: (1) the ALJ failed to properly evaluate the medical opinion evidence; and (2) the ALJ failed to properly evaluate his subjective symptoms. Thielen has not established a basis for remand on either claim. The Commissioner's decision will, therefore, be affirmed.

**I.     The ALJ Adequately Assessed the Medical Opinion Evidence.**

Thielen challenges the ALJ's evaluation of the opinions of the state agency examining psychologist, Brittany Simony, PsyD, and his treating psychiatrist, Dr. William Bjerregaard. Thielen argues that the ALJ's assessment of both medical opinions violated 20 C.F.R §404.1520c and was not supported by substantial evidence. (ECF No. 13 at 6–13.) More specifically, Thielen faults the ALJ for finding Dr. Simon's medical opinions only "partially persuasive." (*Id.* at 7–11.) With respect to Dr. Bjerregaard, Thielen argues that the ALJ relied on only "vague and conclusory findings" in determining his treating psychiatrist's opinions were of limited persuasiveness. (*Id.* at 11–12.)

Thielen faces an uphill battle in challenging the ALJ's treatment of these medical opinions. ALJs are not required to "defer or give any specific evidentiary weight . . . to any medical opinion . . . ." 20 C.F.R. §404.1520c(a). Instead, they must analyze opinions based on their persuasive value according to several factors, including, most importantly, supportability and consistency. *Id.* An opinion is more persuasive when supported by relevant objective medical evidence and explanations. §404.1520c(c)(1). Similarly, an opinion is entitled to more weight when consistent with evidence from other sources. §404.1520c(c)(2). An ALJ's assessment will be sustained as long as it is minimally articulated and reasonable, even if another ALJ (or the Court) could have

reached a different conclusion. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (courts "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment'" (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010))); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering [the regulatory] factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons – a very deferential standard that we have in fact, deemed 'lax.'" (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008))). Applying this standard, the record supports the ALJ's treatment of both medical opinions.

**A. The ALJ Reasonably Found Dr. Simon's Opinion Only Partially Persuasive.**

Dr. Simon examined Thielen in November 2021 and again in September 2022. (ECF No. 10-1 at 287, 315.) On both occasions, Dr. Simon opined that Thielen would not have difficulty understanding simple work instructions, but his ability to carry out tasks would be compromised by moderate difficulty with concentrating, attention, and work pace. (*Id.* at 295–96, 319.) She also opined that Thielen would have marked difficulty interacting with coworkers and supervisors and marked deficits in exhibiting mental control and adapting to stressors on the job. (*Id.*) The ALJ considered Dr. Simon's opinions and found them partially persuasive. (*Id.* at 30.) He concluded that Dr. Simon's opinion that Thielen would not have difficulty understanding work instructions but would have moderate difficulty with concentrating, attention, and work pace was supported by her clinical findings and consistent with Thielen's testimony regarding his memory and concentration. (*Id.*) But the ALJ found that Dr. Simon's clinical findings only partially supported her opinion that Thielen would have marked difficulty interacting with coworkers and supervisors. (*Id.*) He noted that Thielen was cooperative in both of his examinations, and that Dr. Simon did not observe any angry outbursts or aggression. (*Id.*) The ALJ further explained that a marked limitation was not consistent with Dr. Bjerregaard treatment notes, which documented "no objective findings suggestive of significant problems with social interaction." (*Id.*) He concluded that the evidence was more consistent with moderate limitations in interacting with coworkers and supervisors. (*Id.*) The ALJ also found that Dr. Simon's clinical findings only partially supported her opinion that Thielen would have marked deficits in exhibiting mental control and adapting to stressors on the job. He explained that Thielen displayed "reasonable mental functioning despite his impaired insight into his own condition" and relayed to Dr. Simon that he was able to perform a variety of daily activities independently, which suggested a capacity to function effectively. (*Id.*)

The ALJ also noted that Thielen presented to his examination with "intact grooming," suggesting an ability to maintain wellbeing. (*Id.*) The ALJ also found Dr. Simon's opinion inconsistent with Thielen's testimony as to his ability to function and with his ability to attend medical appointments, concluding that the evidence was more consistent with only moderate limits in adapting or managing oneself. (*Id.* at 30–31.)

Thielen characterizes Dr. Simon's opinions as "nearly identical" and argues the ALJ should have accorded them more weight because of their consistency and because it is "unusual" for an ALJ to reject the opinion of a state agency doctor that supports finding the claimant disabled. (ECF No. 13 at 7.) Thielen also faults the ALJ for: considering his lack of outbursts at the examinations; using the term "reasonable mental functioning;" overlooking certain of Dr. Simon's exam findings; and giving weight to Thielen's adequate grooming, ability to attend medical appointments, and regular video gaming. (*Id.* at 7–10.) These arguments fail to establish that the ALJ's decision was not supported by substantial evidence.

As an initial matter, Thielen asks the Court to apply a higher standard of review to the ALJ's "unusual" rejection of Dr. Simon's opinion. (ECF No. 13 at 7.) He relies on *Beardsley v. Colvin*, 758 F.3d 834 (7th Cir. 2014), for the proposition that an ALJ who rejects the opinion of a state agency examining doctor "can be expected to cause a reviewing court to take notice and await a good explanation." *Id.* at 839. But *Beardsley* predates a 2017 change to the regulations governing an ALJ's review of the opinion evidence. *See* 20 C.F.R. §404.1527(c)(1) (requiring that ALJs give more weight to the medical opinions of examining sources for claims filed *before* March 27, 2017); *see also Townsend v. Kijakazi*, No. 22-CV-165, 2023 WL 3022548, at *3 (E.D. Wis. Apr. 20, 2023) (explaining that *Beardsley* lacked relevance to claim filed after regulatory change). For claims filed after March 27, 2017, like Thielen's, the ALJ must not "defer or give any specific evidentiary weight" to any medical sources. §404.1520c(a). The ALJ was, thus, required to evaluate Dr. Simon's opinion for supportability and consistency as he would the opinion of any medical source. And the Court must sustain his assessment as long as it is minimally articulated and reasonable. *See Stepp*, 795 F.3d at 718–19.

The ALJ concluded that Dr. Simon's opinion that he would have marked difficulty interacting with coworkers and supervisors was only partially supported on the basis that Thielen was cooperative and did not exhibit any anger or aggression at his two consultative examinations. (ECF No. 13 at 7–8.) Thielen argues that his cooperativeness in relatively short examinations was

not an accurate measure of his ability to handle the stressors of full-time work, that he has a history mental-health-related detention, and that he was merely "mostly cooperative" in one examination. (*Id.* at 8–9.) But the ALJ was required to consider the extent to which Dr. Simon's examinations supported her opinions. *See* 20 C.F.R. §416.920c(c)(1). Thielen's disagreement with how the ALJ interpreted the objective evidence is not grounds for a remand. Nor does he carry the day on his appeal by complaining that the ALJ ignored additional evidence; the ALJ was not required to address every piece of evidence in the record. *See Warnell*, 97 F.4th at 1053. It was reasonable for the ALJ to ignore a single instance of detention that occurred eight years prior to the relevant period and Dr. Simon's use of the qualifier "mostly" in describing Thielen's cooperativeness in one exam. The ALJ was required to *minimally articulate* why he discounted Dr. Simon's opinion. *See Elder*, 529 F.3d at 415. The ALJ did so, explaining that Dr. Simon's opinion was unsupported by Thielen's cooperation in both examinations and not consistent with Thielen's psychiatrist's objective findings, which provided "no objective findings suggestive of significant problems with social interaction . . . or documentation of outburst or aggressive behavior." (ECF No. 10-1 at 30.) Thielen disagrees with the ALJ's finding but has not shown that it was unreasonable.

      In declining to adopt Dr. Simon's opinion that Thielen would have marked deficits in exhibiting mental control and adapting to stressors on the job, the ALJ remarked that Dr. Simon's clinical findings showed "reasonable mental functioning" despite Thielen's impaired insight into his own condition. (*Id.*) Thielen contends that the ALJ's failure to define "reasonable mental functioning" renders his decision fatally flawed. (ECF No. 13 at 9.) Thielen also argues that the ALJ overlooked Dr. Simon's objective findings that supported the opined marked limitation, including Thielen's monotone affect, below average intelligence, psychomotor retardation, and his mother's indication that he required regular "positive reinforcements." And he argues that the ALJ was wrong to rely on Thielen's own reports that indicated he was capable of grooming himself, playing video games, and attending medical appointments as evidence of wellbeing and an ability to function effectively. (*Id.* at 10.) These arguments also lack merit. "Reasonable" is a term ubiquitous in law and, in fact, defines (in part) the Court's review of the ALJ's decision. *See Stepp*, 795 F.3d at 718 ("We have defined 'substantial evidence' as 'such relevant evidence as a *reasonable* mind must accept as adequate to support a conclusion.'" (emphasis added) (quoting *Elder*, 529 F.3d at 413)). Moreover, after remarking that Dr. Simon's clinical findings showed "reasonable mental functioning," the ALJ immediately proceeded to explain that his opinion was

based on Thielen's own reports to Dr. Simon "that he was able to perform a variety of daily activities independently, which suggests a capacity to function effectively, and he exhibited intact grooming, which suggests an ability to maintain wellbeing." (ECF No. 10-1 at 30.) In context, the ALJ's use of "reasonable mental functioning" to describe Dr. Simon's objective clinical findings was clear. Nor do Thielen's claims that the ALJ overlooked certain evidence, or mischaracterized the evidence of Thielen's grooming habits and daily routine provide grounds for a remand. The Court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence." *Stepp*, 795 F.3d at 718 (quoting *Elder*, 529 F.3d at 413). Thielen insists that he is not asking the Court to reweigh evidence, but that is precisely what he proposes. The ALJ was not required to address every piece of evidence in the record, and he certainly was not required to attribute the same weight to evidence that Thielen has. The ALJ discounted Dr. Simon's opinion because he found it not fully supported by her clinical findings, including Thielen's reports that he was able to perform a variety of daily activities independently and exhibited intact grooming. And he found the opinion inconsistent with Thielen's own testimony of his ability to function and Thielen's ability to regularly attend medical appointments. That is substantial evidence adequate to support the ALJ's conclusion.

### B. The ALJ Reasonably Discounted Dr. Bjerregaard's Opinion.

Dr. Bjerregaard has been Thielen's psychiatrist since 2013. (ECF No. 10-1 at 409.) In December 2022, Dr. Bjerregaard completed a Mental Impairment Questionnaire, in which he checked boxes indicating that Thielen had extreme limitations in 10 of 12 categories of functional limitations and marked limitations in the other two. (*Id.* at 409–11.) Dr. Bjerregaard also opined that Thielen's impairments would cause him to be absent from work "much more than" four days per month. (*Id.* at 411.) The ALJ found that Dr. Bjerregaard's opinion was unsupported by his own clinical findings, which "fail[ed] to document any significantly abnormal mental findings" despite his long relationship with Thielen. (*Id.* at 31.) The ALJ also found the opinion inconsistent with the evidence as a whole, noting that extreme limitations in most areas is suggestive of near incompetence and "would likely suggest the need for structured care not documented in the records." (*Id.*) The ALJ also noted that Dr. Bjerregaard's opinion was provided on "a largely checkbox form with no significant explanation as to why his conditions or symptoms support[ed] such significant limits." (*Id.*)

Thielen characterizes the ALJ's findings as "vague and conclusory," (ECF No. 13 at 11), but the record refutes his argument. The ALJ clearly articulated his reasons for discounting Dr. Bjerregaard's opinion, including that it was inconsistent with his own clinical findings, inadequately explained, and inconsistent with the record, including the opinions of both state agency psychological consultants and Dr. Simon. (ECF No. 10-1 at 30–31.) Thielen faults the ALJ for concluding that Dr. Bjerregaard's opinion would put Thielen at a level of "near incompetence" and for failing to cite "Dr. Bjerregaard's own clinical findings," despite finding them inconsistent with his opinion. But an extreme limitation is the highest level of limitation, indicating an inability "to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, App'x 1, §12.00(F)(2). A disability claimant need only show "extreme" limitation in a single category to satisfy the "paragraph B" criteria. It was reasonable for the ALJ to interpret Dr. Bjerregaard's opinion that Thielen had extreme limitations in nearly every mental category as suggestive of an extreme inability to care for himself that stood in direct conflict with the rest of the record evidence. And the ALJ *did* cite to Dr. Bjerregaard's clinical findings, contrary to Thielen's assertion. (ECF No. 10-1 at 31 (citing *id.* at 255–90, 298–314, 371–74.) In short, the ALJ's decision to discount Dr. Bjerregaard's opinion was reasonable and Thielen's arguments to the contrary are unavailing.[2]

## II. The ALJ Properly Evaluated Thielen's Subjective Symptoms.

Thielen also argues that he is entitled to a remand because the ALJ's evaluation of his subjective symptoms violated Social Security Ruling (SSR) 16-3p and was not supported by substantial evidence. (ECF No. 13 at 13–17.) When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of his . . . physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017.) This is a two-step process: First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the

---

[2] Thielen also argues that the ALJ was "required to address the additional factors" listed in 20 C.F.R. §404.1520c(c)(3)–(5) because Dr. Simon and Dr. Bjerregaard offered differing opinions. (ECF No. 13 at 12.) But an ALJ is only required to address those additional factors when he finds that two or more medical opinions are "equally well-supported" and "consistent with the record," but "not exactly the same." §404.1520c(b)(3). Here, the ALJ determined that Dr. Bjerregaard's opinion was less well-supported and less consistent with the record than Dr. Simon's and, therefore, was not required to address the additional factors.

symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

In rejecting Thielen's claim, the ALJ found that Thielen's medically determinable impairments could be expected to produce his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other record evidence. (ECF No. 10-1 at 25.) The ALJ's review of Thielen's stated symptoms and their consistency with the objective evidence in the record was thorough. (*See id.* at 24–28.) He noted with specificity the ways in which the "relatively mild" objective medical findings contradicted Thielen's allegations of disabling symptoms of bipolar and schizoaffective disorders, including the improvement in symptoms he had seen as the result of a switch to Risperdal injections from oral psychotropics. (*Id.* at 26–27.) And he noted that Thielen's own statements during the consultative examinations and his own reported activities were not consistent with disabling mental health symptoms. (*Id.* at 27.)

Thielen nitpicks the ALJ's thorough examination of his symptoms. First, Thielen again faults the ALJ for using the phrase "reasonable mental function," an argument the Court has already rejected. (ECF No. 13 at 14.) Thielen next argues the ALJ improperly concluded there was improvement in Thielen's symptoms and did so without specificity and without citation to objective evidence to support his conclusion. (*Id.*) Thielen also objects to the ALJ's characterization of his Risperdal injections as "largely routine treatment" and to the ALJ's remark that the record lacked evidence of ongoing psychotherapy, emergency room visits, or intensive outpatient programs. (*Id.* at 15.) Finally, Thielen argues that the ALJ used his "ability to play video games, read, write, watch football, use a phone, listen to music, take out the garbage, and perform [chores]" as inconsistent with an inability to remain on task without proper explanation and without performing a "commonsense review" of the activities. (*Id.* at 16.)

None of Thielen's arguments, either individually or in concert, warrant remand. The ALJ cited Thielen's own reports of improvement, as well as his mother's, which the ALJ was entitled to consider in making his credibility determination. *See Tremper v. Kijakazi*, No. 22-CV-98-SCD, 2023 WL 2301519, at *7 (E.D. Wis. Mar. 1, 2023) (noting ALJ appropriately considered claimant's reports of improvement from medication). Thielen's disagreement with the ALJ's characterization of his Risperdal injections as routine is immaterial and unsupported by his citation

to a clinic website. And his argument that the ALJ mentioned his lack of psychotherapy or other treatment without explanation conflicts with the Court's standard of review. The "ALJ need not address every piece or category of evidence . . . fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Thielen's final argument, that the ALJ misapplied evidence of Thielen's daily activities, is not a fair characterization of the ALJ's decision or the record. Contrary to Thielen's assertion, the ALJ adequately explained that Thielen's numerous independent daily activities, including some housework, personal care tasks, making simple meals, regularly playing video games, listening to music, and exercising, were inconsistent with subjective allegations that Thielen was unable to perform mental tasks such as maintaining attention or remaining on task. (ECF No. 10-1 at 27, 31.) Thielen argues these activities are "very mundane, simple and likely short endeavors" that would not "fully measure" his "ability to sustain work on a task over a period of time." (ECF No. 13 at 16.) But the ALJ explained that Thielen's daily activities alone did "not necessarily corelate to an ability to perform full time work." The ALJ noted they contradicted Thielen's subjective allegations concerning his ability to perform several mental tasks. (ECF No. 10-1 at 27.) And, contrary to Thielen's assertion that his daily tasks were "very mundane, simply and likely short," Thielen testified at the hearing that he regularly played challenging video games all day, for "a few hours" at a time without breaks. (*Id.* at 54–56.) Therefore, Thielen has failed to establish that the ALJ's evaluation of his symptoms was not supported by substantial evidence or "patently wrong." *See Similia*, 573 F.3d at 517.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and this case **dismissed**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on February 6, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge